OPINION OF THE COURT
Lucy Billings, J.
Petitioner seeks a reversal of his medical and psychological disqualification by respondents from service as a New York City firefighter. Respondents based the disqualification largely on petitioner’s traumatic brain injury and ensuing post-traumatic stress disorder (PTSD) that petitioner incurred in the United States Marine Corps while deployed in Iraq over a decade ago and that are incurable conditions. While petitioner also suffered major depressive disorder in the aftermath of his brain injury, respondents do not place significant reliance on this past disorder or refer to it as incurable. As a graduate student in Industrial and Organizational Psychology himself, petitioner recognizes that his brain injury and PTSD are permanent, but urges that they not be used to stigmatize him and that his academic accomplishments and normal functioning since his injury demonstrate his management and control of these conditions’ symptoms.
I. The Psychological Disqualification
Petitioner received a notice of proposed psychological disqualification dated January 16, 2015, from respondent Fire Department of the City of New York, which advised him that he was entitled to request information regarding the reasons for the proposed disqualification by submitting an authorization for release of respondents’ records to his designated expert. Petitioner claims that on February 5, 2015, he submitted the completed authorization accompanied by a request from his expert, Psychiatric Nurse Practitioner Marion Creasap, for respondents’ psychological report regarding petitioner, her patient. Respondents did not then provide any report or other records to her or to petitioner, however, denying her and him access to the information necessary to respond to and contest the reasons for the initial determination. (E.g. Matter of Guti *467 errez v Rhea, 105 AD3d 481, 486 [1st Dept 2013]; Wolfe v Kelly, 79 AD3d 406, 410-411 [1st Dept 2010]; Mayo v Personnel Review Bd. of Health & Hosps. Corp., 65 AD3d 470, 472-473 [1st Dept 2009]; see Matter of D'Ambrosio v Department of Health of State of N.Y., 4 NY3d 133, 140-141 [2005]; Matter of Facey v New York City Dept. of Educ., 105 AD3d 547, 547 [1st Dept 2013].)
Significantly, as of 2015, Psychiatric Nurse Practitioner Creasap had been treating petitioner since 2009. In March 2014 she reported:
“Over the course of nearly five years Mr. Acevedo has consistently kept appointments and been adherent to medication management. His current medication regimin [sic] contains no controlled substances.
“During this period of time Mr. Acevedo has successfully completed a bachelor’s degree (GPA 3.9), maintained family relationship and participated actively in the organization Wounded Warriors.
“This veteran has employed positive coping mechanisms, demonstrated excellent insight and worked toward controlling his symptoms of PTSD.” (Verified petition exhibit C; verified answer exhibit 18.)
Although respondents claim they considered this report, respondent Fire Department proceeded to render its final determination, which petitioner claims he received February 17, 2015, without the opportunity for his current and primary treatment provider since 2008 to respond to the Department’s initial determination. Had respondents truly even considered this treatment provider’s March 2014 report, recounting petitioner’s pursuit of two degrees from July 2009 to March 2014, the February 2015 determination likely would not have commented negatively on petitioner’s lack of employment during that period.
Petitioner then received a final notice of disqualification on psychological grounds dated May 4, 2015, from respondent Fire Department. Only then, after the final determination had been rendered, did petitioner’s expert receive documents revealing respondent Fire Department’s findings, which relied on diagnoses and treatment of petitioner in 2008 and, insofar as they relied on later reports, failed to allow for any response from the treatment provider most familiar with petitioner’s psychological condition since 2008. When Psychiatric Nurse *468 Practitioner Creasap wrote her March 2014 report, she was unaware of respondents’ grounds for disqualifying petitioner.
Finally, respondents’ psychiatrist merely concludes that petitioner “continues to have a significant disability” and “continues to have symptomatology,” yet never articulates what his disability or symptomatology is, except that it disqualifies him from firefighting. (Verified answer exhibit 16 at 2.) Respondents point out that firefighters must work under stress, in close spaces, and in threatening situations, but never assess petitioner’s behavior under those conditions. Respondents do not find petitioner unable, for example, to focus on the task at hand, to concentrate, or to deal with critical situations.
In fact respondents’ psychiatrist repeatedly relies on a supposed conclusion by the United States Department of Veterans Affairs (VA) that petitioner was 90% disabled. Such a determination, however, is nowhere in respondents’ administrative record. Nor is there any indication whether such a determination was made upon petitioner’s discharge from military service almost a decade ago or more recently. Absent any support in the record, respondents’ reliance on such a determination by the VA lacks a factual or rational basis. (Matter of Polayes v City of New York, 118 AD3d 425, 426 [1st Dept 2014]; Matter of East Riv. Hous. Corp. v New York State Div. of Human Rights, 116 AD3d 562, 563-564 [1st Dept 2014]; Matter of Metropolitan Movers Assn., Inc. v Liu, 95 AD3d 596, 599-600 [1st Dept 2012].)
II. The Medical Disqualification
Respondents’ disqualification of petitioner on medical grounds similarly reveals a failure to consider current evidence of his condition. Respondents instead rely on petitioner’s history of diabetes, hypertension, sleep apnea, and migraine headaches. Although the record on which respondents rely is dated April 10, 2014, that date is simply when petitioner’s medical history was recounted. Nothing in that record from April 2014, since then, or even since petitioner’s military service, when petitioner was deployed despite such a history, indicates that he has suffered any of the listed conditions over that period, let alone that he suffers them currently.
III. Judicial Review
Despite these shortcomings, on June 30, 2015, respondent Civil Service Commission affirmed respondent Fire Department’s disqualification of petitioner on medical grounds. On August 27, 2015, respondent Civil Service Commission affirmed *469 respondent Fire Department’s disqualification of petitioner on psychological grounds. Petitioner thus has exhausted the available administrative review so as to seek judicial review of both determinations. (See e.g. Matter of Leo v New York City Dept. of Educ., 100 AD3d 536, 537 [1st Dept 2012]; Combier v City of New York, 57 AD3d 248, 248 [1st Dept 2008].)
For the reasons explained above, respondents’ determinations that petitioner is not qualified to serve as a firefighter on both medical and psychological grounds lack actual “facts” and “sound basis in reason” to support the disqualification. (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]; Metropolitan Movers Assn., Inc. v Liu, 95 AD3d at 598; see CPLR 7803 [3]; Polayes v City of New York, 118 AD3d at 426; East Riv. Hous. Corp. v New York State Div. of Human Rights, 116 AD3d at 563-564; Matter of 20 Fifth Ave., LLC v New York State Div. of Hous. & Community Renewal, 109 AD3d 159, 165-166 [1st Dept 2013]; Matter of Langham Mansions, LLC v New York State Div. of Hous. & Community Renewal, 76 AD3d 855, 858-859 [1st Dept 2010].) In sum, while each of the medical conditions in petitioner’s history potentially would pose a risk to petitioner as a firefighter and hence to the public, if he currently suffers any of these conditions, this essential premise is absent from the record. (Polayes v City of New York, 118 AD3d at 426; East Riv. Hous. Corp. v New York State Div. of Human Rights, 116 AD3d at 563-564; Metropolitan Movers Assn., Inc. v Liu, 95 AD3d at 599-600.) While petitioner’s brain injury and wartime trauma may not be erased, and their symptoms potentially would pose a similar risk, respondents have prevented petitioner from showing that he has completely controlled those potential symptoms on a sustained basis and is capable of continuing that stability long-term. (Gutierrez v Rhea, 105 AD3d at 486; Wolfe v Kelly, 79 AD3d at 410-411; Mayo v Personnel Review Bd. of Health & Hosps. Corp., 65 AD3d at 472-473.) Both determinations reflect a reliance on historical conclusions in disregard of current data. (Metropolitan Movers Assn., Inc. v Liu, 95 AD3d at 599-600.)
Nor do respondents ever explain why they concluded that petitioner’s history of PTSD increases his risk of recurrence in the firefighting setting above the risk of PTSD to a firefighter who has not demonstrated the capacity to cope with trauma, when petitioner has demonstrated that capacity and resisted *470 recurrence. (20 Fifth Ave., LLC v New York State Div. of Hous. & Community Renewal, 109 AD3d at 165-166; Langham Mansions, LLC v New York State Div. of Hous. & Community Renewal, 76 AD3d at 858-859.) In fact, a candidate who has dealt with life threatening situations and overcome severe trauma such as firefighters may experience may be uniquely equipped for that service.
Finally, petitioner’s graduate work in Industrial and Organizational Psychology, in which petitioner has maintained a 4.0 grade point average, and which likely would enable him to secure more comfortable and lucrative employment, surely would be a valuable asset in the Fire Department. (Langham Mansions, LLC v New York State Div. of Hous. & Community Renewal, 76 AD3d at 859.) It is a credit to both petitioner and the Department that he seeks to employ his experience and. credentials in life threatening public service. Given respondents’ disavowal that the Fire Department never hires a candidate as a firefighter with a history of PTSD, their explanation why petitioner is not such a candidate whom the Department would hire is lacking.
IV. Disposition
Consequently, the court grants the petition and vacates respondent Civil Service Commission’s affirmance of respondent Fire Department’s disqualification of petitioner on medical grounds June 30, 2015, and affirmance of its disqualification of petitioner on psychological grounds August 27, 2015. (CPLR 7803 [3]; 7806.) The court remands this proceeding to respondent Civil Service Commission (1) to reconsider petitioner’s qualification for the position of firefighter based on his medical and psychological condition as of when petitioner applied for that position and since then or (2) to refer that reconsideration to respondent Fire Department. During that reconsideration, respondents shall provide petitioner a meaningful opportunity to respond to and contest, through his expert evidence, a further finding that he is not qualified for the position.